IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIMAR SYSTEMS, INC. d/b/a/ <br> CMS TECHNOLOGIES and CHRIMAR <br> HOLDING COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CISCO SYSTEMS, INC., CISCO <br> CONSUMER PRODUCTS LLC, CISCO- <br> LINKSYS LLC, HEWLETT-PACKARD CO., <br> 3COM CORPORATION, and EXTREME <br> NETWORKS, INC., <br><br> Defendants. | Civil Action No. 11-1050-GMS |

## MEMORANDUM

### I.  INTRODUCTION

ChriMar Systems, Inc. d/b/a/ CMS Technologies ("ChriMar Systems") and ChriMar Holding Company, LLC ("ChriMar Holding") (collectively, "ChriMar") filed this patent infringement action against Cisco Systems, Inc., Cisco Consumer Products LLC, Cisco-Linksys LLC, Hewlett-Packard Co. ("HP"), 3Com Corporation ("3Com"), Avaya, Inc. ("Avaya"), and Extreme Networks, Inc. ("Extreme") (collectively, the "defendants") on October 31, 2011. (D.I. 1.) The court ordered the case stayed on January 9, 2012 due to a parallel proceeding before the United States International Trade Commission ("ITC"). (D.I. 25.) The ITC proceeding was terminated on August 27, 2012, and the court lifted the stay in this action on November 26, 2012. (D.I. 43.)

On February 1, 2013, HP and Extreme (together, the "moving defendants") filed the present motion, seeking transfer of the entire action to the United States District Court for the Northern District of California or, alternatively, severance of the claims against HP and Extreme and transfer of those claims to the Northern District of California. (D.I. 64.) Cisco Systems, Inc., Cisco Consumer Products LLC, and Cisco-Linksys LLC (collectively, the "Cisco defendants") do not oppose transfer. (*Id.* at 1; D.I. 79) Avaya is no longer a party to this case, as it reached a settlement and was dismissed on July 31, 2012. (D.I. 38.) Likewise, 3Com is no longer an independent legal entity by virtue of its merger with HP. (D.I. 64 at 1.) Thus, all current defendants either move for or do not oppose transfer.

For the reasons that follow, the court will grant the present Motion to Transfer and order that this action be transferred to the Northern District of California.

## II.    BACKGROUND

ChriMar Systems is a Michigan corporation having its principal place of business in Farmington Hills, Michigan. (D.I. 1 at ¶ 1.) ChriMar Holdings is a Texas company located in Marshall, Texas. (*Id.* at ¶ 2.) ChriMar Systems claims to be "the sole owner of all rights in and to the intellectual property rights at issue" in this action, namely U.S. Patent No. 7,457,250 (the "'250 Patent"). (*Id.* at ¶¶ 1, 15.)

Each of the Cisco defendants is incorporated in California and has its principal place of business in either San Jose or Irvine, California. (*Id.* at ¶¶ 3–5.) HP is a Delaware corporation based in Palo Alto, California, and Extreme is a Delaware corporation with headquarters in Santa Clara, California. (*Id.* at ¶¶ 6, 9.) ChriMar contends that each of the defendants infringes the '250 Patent by making, using, offering for sale, selling, importing, exporting, supplying, or

distributing products that operate in compliance with IEEE 802.3af/at standards.[1] (*Id.* at ¶ 16.)

## III. STANDARD OF REVIEW

A. Transfer Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This subsection gives the court "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995).

In deciding a motion to transfer, the court engages in a two-step inquiry, asking (1) whether the action could have been brought originally in the proposed transferee forum and (2) whether transfer would best serve the interests of convenience and justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5865742, at *1 (D. Del. Nov. 16, 2012). The defendant bears the burden at each step of the analysis, *Jumara*, 55 F.3d at 879–80, and the Third Circuit has made clear that "unless the balance of convenience of the parties is strongly in favor

---

[1] ChriMar contends that the '250 Patent contains claims that cover the practice of the IEEE 802.3af/at standard and that the defendants' products practice that standard. (D.I. 77 at 4.) ChriMar describes the IEEE 802.3af/at standard as follows:
> The IEEE 802.3af/at standards that form the crux of this case (and the related ITC Investigation) include protocols for providing safe delivery of operational power to an end device over twisted pair cabling such as Ethernet cables. These specifications include a detection protocol to distinguish between end devices that can receive operational power over the twisted pair cable (a Powered Device or "PD") and older devices that cannot, in order to prevent damage to an older non-compatible device. The IEEE standards also recite a protocol for distinguishing between PDs with different power classifications. Both these protocols involve altering a DC signal to convey information about a PD to a standards-compliant power sourcing equipment, such as a hub, router, or switch.

(*Id.*)

3

of defendant, the plaintiff's choice of forum should prevail,"[2] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

B. Severance

Questions of severance are generally controlled by Rule 21 of the Federal Rules of Civil Procedure, which states that "misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. However, the America Invents Act ("AIA") governs joinder and severance issues arising in patent cases filed after September 16, 2011. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 19, 125 Stat. 284, 332–33 (2011). Specifically, the AIA, as codified at 35 U.S.C. § 299, provides:

> (a) With respect to any civil action arising under any Act of Congress relating to patent . . . parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, or counterclaim defendants only if—
> > (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
> > (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.
> (b) For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

35 U.S.C. § 299(a–b). "While transfer motions are governed by regional circuit law, motions to sever are governed by Federal Circuit law because joinder in patent cases is based on an analysis

---

[2] The law of the Third Circuit governs the court's decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit . . . .").

of the accused acts of infringement, and this issue involves substantive issues unique to patent law." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).

## IV. DISCUSSION

As noted above, the decision of whether to transfer an action under § 1404(a) requires a two-part inquiry. The court will first consider whether ChriMar might have brought this action in the Northern District of California before turning to the balance of convenience analysis. Finding that transfer is appropriate here, the court will not proceed to the alternative question of party severance.

A. Propriety of Proposed Transferee Venue

Section 1404(a) provides that an action may be transferred to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only order transfer to the proposed transferee forum if venue would have been proper there and if that court could have exercised personal and subject matter jurisdiction. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[1][b] (3d ed.2012).

The moving defendants argue—and ChriMar does not dispute—that this action could have been brought originally in the Northern District of California. (D.I. 65 at 9.) The court agrees. Each of the remaining defendants are headquartered in the Northern District of California and thus subject to personal jurisdiction in that court, and the question of venue is resolved by this personal jurisdiction conclusion. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); § 1391(c) ("For all venue purposes . . . an entity with the capacity to sue and be sued

5

in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."). Additionally, the California district court could exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." § 1338(a). As such, the court finds that the moving defendants have cleared the first hurdle of the transfer inquiry and will proceed to the required convenience analysis.[3]

B. *Jumara* Analysis

The Third Circuit has instructed courts faced with a transfer motion to engage in a case-by-case assessment rather than applying any "definitive formula." *See Jumara*, 55 F.3d at 879. This individualized examination accounts for the various public and private interests protected by § 1404(a). The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

---

[3] The court recognizes that the propriety of the proposed transferee forum is generally measured from the time the action was commenced and not at the time the transfer motion was filed. *See, e.g., Shutte*, 431 F.2d at 24 (noting that plaintiff must have been able "to bring the action in the transferee forum *at the time of the commencement of the action*" (emphasis added)). As such, there might exist some confusion as to how this suit could have been brought in California, when former defendant Avaya—a Delaware corporation headquartered in New Jersey—has no readily apparent connection to that forum. Put simply, an exception to the general timing rule announced above exists and "the action may nevertheless be transferred if the defendants as to whom venue in the transferee district would have been improper have settled or been dismissed from the action when the transfer motion is made." 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[4][b] (3d ed.2012) (citing *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982); *Magee v. Essex-Tec Corp.*, 704 F. Supp. 543, 546 (D. Del. 1988)).

the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court considers each of these "*Jumara* factors" to the extent they are disputed by the parties.

1. Private interest factors

   a. Plaintiffs' forum preference

The first *Jumara* factor is the "plaintiff[s'] forum preference as manifested in the original choice." *Id.* at 879. This consideration is generally given significant weight in the balance of convenience analysis. *See Smart Audio Techs.*, 2012 WL 5865742, at *6; *see also Schubert v. Cree, Inc.*, 12-922-GMS, 2013 WL 550192, at *3 (D. Del. Feb. 14, 2013); *Semcon Tech, LLC v. Intel Corp.*, Nos. 12-531-RGA, 12-534-RGA, 2013 WL 126421, at *2 (D. Del. Jan. 8, 2013). In this case, however, ChriMar has filed suit outside its home fora of Michigan and Texas. Thus, its preference is entitled to something less than maximum deference. *See, e.g., Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013); *Smart Audio Techs.*, 2012 WL 5865742, at *6–7; *see also In re Link-A-Media Devices Corp.*, 662 F.3d at 1223 ("When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference.").

While ChriMar is correct that the plaintiff's forum choice is "a paramount consideration," the court has recently explained that this deference is already shown by placing the burden on the movant to demonstrate that the balance of convenience *strongly* favors transfer. *Smart Audio Techs.*, 2012 WL 5865742, at *4. On the other hand, the plaintiff's selection is only given

increased weight as an individual *Jumara* factor where the plaintiff has chosen his home turf or can point to other legitimate reasons for filing suit in Delaware. *Id.* Though ChriMar offers no rationale for its decision to litigate in this district, the court has recognized that a defendant's incorporation in Delaware provides sufficient footing. *See, e.g., Schubert v. OSRAM AG*, No. 12-923-GMS, 2013 WL 587890, at *4 (D. Del. Feb. 14, 2013). Given the moving defendants' Delaware incorporation, the court will grant ChriMar's forum choice increased weight in the *Jumara* analysis but less than the "substantial" or paramount" weight to which it would be entitled had ChriMar filed suit in its home forum. *See id; Smart Audio Techs.*, 2012 WL 5865742, at *6 (citing *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)).

### b. Defendants' forum preference

The court next considers the defendants' choice of forum. *Jumara*, 55 F.3d at 879. Here, the moving defendants clearly would prefer to proceed in California, the state in which each have their principal places of business. This factor weighs in favor of transfer.[4]

### c. Whether the claim arose elsewhere

The third private interest *Jumara* factor is "whether the claim arose elsewhere." *Id.* "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7.

---

[4] ChriMar argues that HP and Extreme's forum preference should be given less weight since they are both Delaware corporations and necessarily amenable to suit in this district. (D.I. 77 at 9–10.) The court, however, believes the fact of the moving defendants' Delaware incorporation is most appropriately considered within the context of the "party convenience" *Jumara* factor. *See, e.g., Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *5 (D. Del. Jan. 7, 2013); *Intellectual Ventures I, LLC v. Altera Corp*, 842 F. Supp. 2d 744, 756 (D. Del. 2012). The present factor addresses only the defendants' forum preference, and that preference is quite clear in this case.

Accordingly, where the defendant in a patent infringement action operates on a national or international level, this factor is often neutral.

The court, however, has acknowledged that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)). Since all remaining defendants are based in the Northern District of California and because "the design, development, marketing, and sale of the accused products largely occurred in" that forum, this factor weighs in favor of transfer. (D.I. 65 at 11.)

### d. Convenience of the parties

The court next asks which forum would be more convenient for the parties, remaining particularly mindful of: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *6 (D. Del. Aug. 20, 2012) (quoting *Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *12 (D. Del. May 18, 2012)); *see also Jumara*, 55 F.3d at 879.

ChriMar notes that the moving defendants are not regional enterprises and argues that requiring them to litigate in Delaware will not be particularly burdensome. (D.I. 77 at 8.) The moving defendants, however, point out that their "relevant research and development, finances, marketing, and other operations are primarily located in or directed out of Northern California" and that most of the potential defendant party witnesses are also located in that forum, while

none reside in Delaware. (*Id.*) Requiring these California-based parties to litigate in Delaware will likely subject them to substantial expenses. (D.I. 80 at 5.) On the other hand, ChriMar has only three employees, all of whom apparently work from Michigan—as such, ChriMar officers will be required to travel regardless of the eventual forum. (*Id.* at 12–13.)

While the court does consider "the relative ability of each party to bear [the costs of litigation-related travel] in light of its size and financial wherewithal" and, as a result, appreciates ChriMar's point regarding the national presence of the moving defendants, it must also account for the absolute costs likely to flow from its transfer decision. ChriMar will be forced to bear travel costs no matter the court's decision, but proceeding in California will likely spare the defendants significant expense. This factor weighs ever so slightly in favor of transfer.[5]

e. Convenience of witnesses

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Additionally, the court only assigns this factor any weight "when there is some reason to

---

[5] The weight accorded this factor is further reduced by the fact that the moving defendants are both incorporated in Delaware. "[A] Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I*, 842 F. Supp. 2d at 756; *see also AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012). As in its recent decision in *Linex Techs.*, the court is mindful that "not all the defendants have chosen to incorporate in Delaware" and "cognizant of *In re Link-A-Media*'s general warning to avoid weighing a defendant's state of incorporation too heavily in the transfer analysis." *Linex Techs.*, 2013 WL 105323, at *5. "Nevertheless, the decisions of [some defendants] to incorporate in Delaware do suggest that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be." *Id.*

believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs.*, 2012 WL 5865742, at *8.

The moving defendants note that "witnesses for third-party chipset suppliers who will testify about the design, development, and function of the [Power over Ethernet ("PoE")] chipsets that primarily control the accused functionality are located in California." (D.I. 65 at 13.) Unlike the District of Delaware, the Northern District of California has subpoena power over these potential witnesses. (D.I. 80 at 6.) ChriMar responds that (1) recorded deposition testimony can often be used at trial in lieu of live testimony, (2) many of these potential witnesses were already deposed during the related ITC proceedings, and (3) if further testimony is needed, the parties can conduct additional depositions in a manner convenient for the third-party witnesses. (D.I. 77 at 11–12.) While ChriMar's point is well-taken, the court will not wholly ignore this factor in its transfer analysis—the court's lack of subpoena power and the sheer distance of the identified third-party witnesses from Delaware suggest that, if live testimony is required, the court might have some trouble procuring the witnesses' attendance at trial. *See Linex Techs.*, 2013 WL 105323, at *5. This consideration weighs lightly in favor of transfer.

### f. Location of books and records

The final private interest *Jumara* factor is "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009);

*see also Smart Audio Techs.*, 2012 WL 5865742, at *9.

In this case, the remaining defendants as well as the known third-party suppliers are based in the Northern District of California. (D.I. 65 at 14.) While technological advances relating to the electronic storage and transfer of documents may reduce the value of this factor, the court nevertheless must give it some weight in the *Jumara* analysis. *See In re Link-A-Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at *9. This factor weighs gently in favor of transfer.

2. Public interest factors

The parties seemingly agree that several of the public interest factors are inapplicable to or neutral in the present transfer analysis.[6] The court will address only those factors in dispute.

a. Practical considerations

The first contested public interest factor concerns "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The moving defendants provide substantially the same arguments offered in support of their position on the "convenience of the parties" factor, suggesting that litigating in Delaware would increase the parties' aggregate litigation expenses. (D.I. 65 at 15.) Similarly, ChriMar responds by referencing its own earlier arguments regarding the party convenience factor. Thus, for the reasons articulated above, the court finds that this "practical considerations" factor likewise counsels transfer.

The court, however, has previously noted that "the 'practical considerations' issue—which is listed as a 'public interest' rather than a 'private interest' factor—requires that at least

---

[6] The parties do not dispute the public interest factors concerning "the enforceability of the judgment" or "the public policies of the fora". (D.I. 65 at 14; D.I. 77 at 12–14.)

12

some attention be paid to the *public* costs of litigation." *Schubert*, 2013 WL 550192, at *5. Neither party has directly addressed the broader public costs of proceeding in one district or the other. As such, the court believes this factor is entitled to only minimal weight here.

### b. Relative administrative difficulty

The court also considers "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. The moving defendants observe that judges in this district have a heavier patent caseload than our colleagues in the Northern District of California. (D.I. 65 at 15.) ChriMar responds that judges in the Northern District of California "carry a heavier caseload in general" and that "the time to resolution of patent cases that go to trial is effectively the same in this District and the Northern District of California, and in fact, patent cases proceed to trial faster in this District than they do in the Northern District of California." (D.I. 77 at 13.) The court regards this factor as neutral.

### c. Local interests

The court next considers any "local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. The moving defendants argue that their position as "major employers" within the Northern District of California creates a local interest in that forum. (D.I. 65 at 16.) The court, however, generally views patent infringement actions as national rather than local controversies. *See, e.g., Schubert*, 2013 WL 550192, at *6; *Smart Audio Techs.*, 2012 WL 5865742, at *10; *see also Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012) ("[P]atent litigation does not constitute a local controversy in most cases."). While this case may well be of local interest in California, it reflects a much broader controversy, and the court thus treats this factor as neutral.

### d. Familiarity with local law

The final public interest factor is "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80. While this is not a diversity case, the moving defendants note that counterclaims have been filed under the California Unfair Business Practices Code and suggest that "[t]he familiarity of California's courts with California state law militates in favor of granting transfer." (D.I. 65 at 16.) The court sees no practical reason why this factor should not also apply where a supplemental claim or counterclaim has been raised under the state laws of one of the potential fora. Nevertheless, the courts of either District are equally able to adjudicate those issues arising under California state law. As such, the court regards this factor as neutral.

### 3. *Jumara* analysis summary

While the first factor—the plaintiffs' forum preference—pulls against transfer and is given increased weight here, all the remaining *Jumara* considerations recommend transfer or have no effect on the court's analysis. As such, the court finds that the moving defendants have met their burden of demonstrating that the balance of convenience tips strongly in favor of transfer.

## V. CONCLUSION

For the reasons discussed above, the court will grant the moving defendants' Motion to Transfer Venue (D.I. 64.) and transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The court need not consider the alternative motion to sever.

Dated: March 6, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CHRIMAR SYSTEMS, INC. d/b/a/ CMS TECHNOLOGIES and CHRIMAR HOLDING COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CISCO SYSTEMS, INC., CISCO CONSUMER PRODUCTS LLC, CISCO-LINKSYS LLC, HEWLETT-PACKARD CO., 3COM CORPORATION, and EXTREME NETWORKS, INC., <br><br> Defendants. | Civil Action No. 11-1050-GMS |

## ORDER

At Wilmington this 6th day of March 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

1. The Motion to Transfer Venue (D.I. 64) filed by the defendants Hewlett-Packard Co. and Extreme Networks, Inc. is GRANTED;

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Northern District of California; and

3. The Clerk of the Court is directed to close this case.

_____
CHIEF, UNITED STATES DISTRICT JUDGE