UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CHRIMAR SYSTEMS INC, *et al.*, | No. C 13-01300 JSW (MEJ) |
| Plaintiffs, | **ORDER ON SEPTEMBER 29, 2013 DISCOVERY LETTER** [Dkt. No. 155] |
| v. | |
| CISCO SYSTEMS INC, *et al.*, | |
| Defendants. | |

On September 24, 2013, Plaintiff ChriMar and Defendant Hewlett-Packard filed a joint letter detailing a dispute over the proper provision to include in their proposed protective order regarding in-house counsel's access to confidential materials. Jt. Ltr., Dkt. No. 155. HP seeks to include the provision in Patent Local Rule 2-2's Model Protective Order permitting disclosure of highly confidential materials to in-house counsel. ChriMar, however, proposes the approach taken in the Court's Stipulated Protective Order for Litigation Involving Patents, Highly Confidential Information and/or Trade Secrets, which restricts access to information designated Highly Confidential to outside counsel. Defendant Cisco takes no position on this issue and does not join in the letter.

In support of its position, HP argues that the Model Protective Order set forth in Patent Local Rule 2-2 controls discovery in this case and sets forth the presumptively reasonable conditions regarding the treatment of highly confidential information. *Id*. at 3. Specifically, HP explains that it "seeks only for two in-house counsel for each party who are not involved in competitive decision-making, to have access to HIGHLY CONFIDENTIAL information, as in § 7.3(b) of the PLR 2-2 Order." *Id*. According to HP, its in-house counsel cannot effectively participate in this litigation if they are barred from viewing critical information about the case, and preventing counsel's access to such materials will "materially prejudice HP by impairing its ability to put on a defense, impose an

undue burden on HP's trial preparation, and impede settlement discussions." *Id*.

In particular, HP contends that over 600,000 documents have already been produced in discovery during the ITC case, a substantial portion of which were designated CONFIDENTIAL BUSINESS INFORMATION under the terms of an ITC protective order. *Id*. The parties agreed that CBI materials from the ITC case are to be treated in this action as HIGHLY CONFIDENTIAL. *Id*. at 3-4. HP asserts that it is important for in-house counsel to have access to such materials because they include documents relating to ChriMar's claims and HP's counterclaims that are necessary to evaluate the case and the potential for settlement. *Id*. at 4.

ChriMar, however, argues that HP's approach should be rejected. *Id*. at 5. In support, ChriMar states that, under the ITC protective order, HP's in-house counsel had no access to CBI and that it litigated the claims in that action without any in-house counsel access to CBI and never requested that the protective order in that case be modified to grant such access. *Id*. ChriMar also points out that Cisco has not requested access for its in-house counsel, demonstrating that broad access to all confidential information is not needed by similarly-situated defendants. *Id*. It contends that HP's attempt to permit in-house counsel to access every confidential document produced in the ITC case unnecessarily increases the risk of inadvertent disclosure due to the large volume of documents that would become accessible, and exceeds the scope of what is necessary for HP to litigate its claims. *Id*.

Instead, ChriMar proposes that an approach initially proposed by HP should be taken. Specifically, in-house counsel may access "Confidential," but not "Highly Confidential" materials, with ChriMar redesignating documents as needed. *Id*. at 6. It argues that this approach is not unduly burdensome because only ChriMar will bear the expense of redsignating documents given that it lacks in-house counsel. *Id*. ChriMar further contends that, prior to this dispute, HP never requested in-house counsel access to any ChriMar confidential document, despite almost two years of litigation and settlement negotiations, demonstrating that any argument by HP that documents are needed to fairly litigate its claims is merely theoretical. *Id*. Finally, ChriMar argues that its proposal to redesignate, as needed, ITC-produced documents as "Confidential" for access by HP's in-house

counsel is more appropriate under the law, as HP cannot demonstrate that "its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel." *Id*. (citing *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000)).

The Court has carefully considered the parties' arguments and agrees with ChriMar. As ChriMar points out, the documents produced in the ITC action were only designated CBI; the parties did not distinguish between or categorize documents as Confidential or Highly Confidential. Thus, adopting HP's approach would allow its in-house counsel to access materials that its counsel would not otherwise have direct access to had they produced in this lawsuit and ChriMar designated them as Highly Confidential. While the parties do not discuss what percentage of the documents ChriMar produced in the ITC action would be categorized as Highly Confidential, as ChriMar points out, it will solely bear the burden of redesignating the documents. Moreover, the Court agrees with ChriMar that allowing HP's in-house counsel complete access would increase the likelihood of inadvertent disclose of its confidential information and that there is nothing suggesting that utilizing the re-designation approach will inhibit HP's ability to fully and fairly litigate this matter.

Accordingly, the Court **ORDERS** that the approach set forth in the Court's Stipulated Protective Order for Patents, Highly Confidential Information and/or Trade Secrets, as proposed by ChriMar, be used in the parties' proposed protective order.

**IT IS SO ORDERED.**

Dated: October 24, 2013

_____
Maria-Elena James
United States Magistrate Judge