United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRIMAR SYSTEMS, INC, et al.,

    Plaintiffs,

    v.

CISCO SYSTEMS, INC, et al.,

    Defendants.
_____/

No. C 13-01300 JSW

**ORDER REGARDING MOTION FOR JUDGMENT ON THE PLEADINGS**

Now before the Court is the motion by Plaintiff ChriMar Systems Inc. d/b/a/ CMS Technologies and ChriMar Holding Company, LLC (collectively, "ChriMar") for judgment on the pleadings regarding the antitrust counterclaims filed by Defendants Cisco Systems, Inc. and Linksys LLC (together, "Cisco") and by Defendant Hewlett-Packard Company ("HP") (collectively, "Defendants"). Having considered the parties' pleadings and relevant legal authority, the Court hereby grants ChriMar's motion.

**BACKGROUND**

On October 31, 2011, ChriMar filed this patent infringement action against Defendants, accusing them of infringing United States Patent No. 7,457,250 ("'250 Patent"). Cisco filed counterclaims on January 6, 2012 and amended its counterclaims on December 26, 2012. HP filed counterclaims on December 26, 2012.

In their counterclaims, Defendants allege that the Institute of Electrical and Electronics Engineers ("IEEE") is a standard setting organization and that it amended the 802.3 standard with the 802.3af and 802.3at standards. (Cisco's First Amended Counterclaims ("FAC"), ¶¶ 19-

21; HP's Counterclaims, ¶¶ 18-20.) The IEEE has a "'patent disclosure policy' that requires participants in the standards setting process to disclose patents or patent applications they believe to be infringed by the practice of the proposed standard." (Cisco FAC, ¶ 21; HP Counterclaims, ¶ 21.) The disclosure policy further requires those who disclose intellectual property rights to provide a letter of assurance stating whether they would enforce any of their present or future patent(s) whose use would be required to implement the proposed IEEE standard or provide a license to applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination ("RAND" terms). (*Id*.) Defendants allege that ChriMar was required to but failed to disclose to the IEEE its belief that its '250 Patent was essential to the proposed 802.3af and/or the 802.3at amendments to the 802.3 standard and that ChriMar was not willing to license the '250 Patent on RAND terms.   (Cisco FAC, ¶ 25; HP Counterclaims, ¶ 24.)

Defendants further allege that "ChriMar's failure to disclose the '250 Patent was done knowingly and with intent to deceive and induce the IEEE and participants in the standards-setting process" for the amendments to the IEEE 802.3af and 802.3at standards. (Cisco FAC, ¶ 31; HP Counterclaims, ¶ 30.) "Due in part to ChriMar's knowing and intentional deception, the industry adopted the present form of the IEEE 802.3af and IEEE 802.3at amendments to the IEEE 802.3 standard, and is now locked-in to the current implementation . . . for Power over Ethernet-enabled products." (Cisco FAC, ¶ 32; HP Counterclaims, ¶ 31.) According to Defendants, if ChriMar had properly disclosed to the IEEE its belief that the '250 Patent "would be infringed by practicing the 802.3af and 802.3at amendments to the 802.3 standard, and that ChriMar was unwilling to license the patent on RAND terms, the IEEE would have (a) incorporated one or more viable alternative technologies into the IEEE 802.3af and IEEE 802.3at amendments to the IEEE 802.3 standard; (b) required ChriMar to provide a letter of assurance that it would license the '250 Patent on RAND terms; (c) decided to either not adopt any amendment to the IEEE 802.3; and/or (d) adopted an amendment that did not incorporate technology that ChriMar claims is covered by the '250 Patent." (Cisco FAC, ¶ 36; HP Counterclaims, ¶ 35.)

2

Defendants allege that ChriMar has taken the position that all Power over Ethernet-enabled products infringe the '250 Patent. To the extent that the '250 Patent is essential to the 802.3af and the 802.3at standards, no viable technology substitutes exist and ChriMar has monopoly power over the Power over Ethernet Technology Market. (Cisco FAC, ¶ 64; HP Counterclaims, ¶ 60.)

Defendants allege that Plaintiffs violated Section 2 of the Sherman Act by abusing monopoly power. HP also brings a claim for attempted monopolization. Defendants both bring claims under California's Unfair Competition Law, California Business Code § 17200 ("UCL") based on their monopolization claims.

## ANALYSIS

### A. Applicable Legal Standards.

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the claims asserted in the complaint. A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008). "For purposes of the motion, the allegations of the non-moving party must be accepted as true . . . Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). However, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

Where a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires the plaintiff to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the charged misconduct. *See Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994). However, Rule 9(b) particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement

of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106 ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotation marks and citations omitted).

**B.  ChriMar's Motion.**

**1.  Defendants' Monopolization Counterclaims.**

ChriMar moves to dismiss Defendants' counterclaims for monopolization on the grounds that Defendants failed to sufficiently allege the relevant market, ChriMar's market share in pleading monopoly power, or any causal antitrust injuries. "A claim of monopolization under [Section] 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N.D. Cal. 2008) (citing, *inter alia*, *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570 (1966)). In addition, a plaintiff must allege facts to show "an injury caused by the violation." *Id.* (citing *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 855 (9th Cir. 1995); *P. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992).

**a.  Relevant Product Market.**

A relevant product market usually is defined as "the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Tanaka v. University of So. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *see also W. Parcel Exp. v. United Parcel Serv. of America, Inc.*, 65 F. Supp. 2d 1052, 1058 (N.D. Cal. 1998). A court may grant a motion to dismiss if a "'plaintiff fails to define [the] proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products....'" *In re eBay*

*Seller Antitrust Litig.*, 545 F. Supp. 2d at 1031 (quoting *Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997); *see also Newcal Indus. Inc. v. Ikon Office Solutions, Inc.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citing *Queen City Pizza*, 124 F.3d at 436-37) (court may dismiss where relevant market is "facially unsustainable"). However, because "the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Newcal*, 513 F.3d at 1044 (citing *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (holding that the market definition depends on a "factual inquiry into the 'commercial realities' faced by consumers") (quotations omitted)). However, a complaint may be dismissed pursuant to Rule 12(b)(6) "if the complaint's 'relevant market' definition is facially unsustainable." *Id.* (citing *Queen City Pizza*, 124 F.3d at 436-37). The relevant market includes both a product market and a geographic market. *See Newcal*, 513 F.3d at 1045 n. 4. ChriMar does not argue that Defendants fail to allege sufficient facts to define the relevant geographic market.

Courts typically require that the proposed relevant market be defined with reference to the rule of reasonable interchangeability and cross-elasticity of demand. However, in the context of a standard setting organization ("SSO") locking in a standard which eliminates substitute or alternative technologies, courts have allowed a relevant market to be defined by the technologies that were competing before the standard was adopted to perform the function that is covered by the standard and the essential patent. For example, in *Apple Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1672493, *5 (N.D. Cal. May 14, 2012), the court found sufficient Apple's allegations that defined the relevant market as "the various markets for technologies that – before the standard was implemented – were competing to perform each of the various functions covered by each of Samsung's purported essential patents for" the standard. Moreover, the court noted that Apple alleged that pre-standardization there were alternative substitutes for the technologies covered by Samsung's patents, and that after the SSO adopted the proposed standard, viable alternative technologies were excluded. *Id.*; *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007) (accepting as

sufficient allegations that defined the relevant market as the market for the defendant's proprietary technology that is essential to implement the standard, noting that the technology was not interchangeable with or substitutable for other technology due to the standard).

Defendants argue that they defined the market as comprising the technologies that competed to perform the functions in the Power over Ethernet standards allegedly covered by the '250 Patent. But their counterclaims do not actually contain such allegations. (*See* Cisco FAC, ¶ 60; HP Counterclaims, ¶ 56.) Accordingly, the Court finds that Defendants fail to sufficiently allege the relevant market.

### b. Market Share.

Defendants argue that their allegations regarding ChriMar's failure to disclose its belief that the '250 Patent was essential to the 802.3af and 802.3at amendments to the IEEE 802.3 standard to the standard setting organization ("SSO") is sufficient to allege their monopoly claims. According to Defendants, it is sufficient to allege that if the '250 Patent is essential, then ChriMar has monopoly power. However, the authority they cite does not support their position.

Defendants rely on *Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011). However, in that case, the court determined that Apple had sufficiently alleged monopoly power. *Id.*, 2011 WL 4948567 at *4 fn. 4; *see also Actividentity Corp. v. Intercede Group PLC*, 2009 WL 8674284, *4 (N.D. Cal. Sept. 11, 2009) (finding allegations that the party had approximately 90% of the market were sufficient to allege monopoly power). The court in *Samsung* further noted that, in contrast to the theory that a patent holder misrepresented to a SSO that it would license its intellectual property on RAND terms, "[c]ourts have been more reluctant to find an antitrust violation based on the theory that a failure to disclose intellectual property rights in a declared essential patent created monopoly power for a member of the SSO." *Id.*, 2011 WL 4948567 at *5 (citing *Rambus Inc. V. FTC*, 522 F.3d 456 (D.C. Cir. 2008) and *Townsend v. Rockwell Intl. Corp.*, 2000 WL 433505 (N.D. Cal. March 28, 2000)). In order to allege market power, the *Samsung* court required the plaintiff to allege that "there was an alternative technology that the SSO was considering during the

6

standard setting process and that the SSO would have adopted an alternative standard had it known of the patent holder's intellectual property rights." *Id.*; *see also Actividentity*, 2009 WL 8674284, *3 (a monopolization claim based on failure to disclose to an SSO must allege, *inter alia*, "but for the failure to disclose, the SSO would have developed a different standard.")  The *Samsung* court also made clear that the heightened pleading requirements under Rule 9(b) for fraud applies to Defendants' type of antitrust claim. *Id.*, 2011 WL 4948567 at *6.  Upon review of Defendants' counterclaims, the Court finds that they fail to allege non-conclusory facts which, if true, would be enough to show that ChriMar acquired sufficient monopoly power. Notably, Defendants fail to clearly allege that the IEEE would have adopted an alternative standard had it known about the '250 Patent and ChriMar's position with respect to its '250 Patent.  Therefore, the Court finds that Defendants fail to sufficiently allege market power.

### c. Antitrust Injury.

The Ninth Circuit has identified "four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *American Ad. Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).  Defendants merely allege, in a conclusory fashion, that ChriMar's alleged conduct "has caused and will directly and proximately cause antitrust liability to [Defendants] within the Power over Ethernet Technology Market . . ."   (Cisco FAC, ¶ 66; HP Counterclaims, ¶ 62.)  Defendants fail to allege any *facts* which, if true, would demonstrate an antitrust injury.  Accordingly, based on their failure to sufficiently allege the relevant market, monopoly power, or any antitrust injury, the Court finds that Defendants have not alleged sufficient facts to state a counterclaim for monopolization.  However, the Court will provide Defendants with leave to amend.

### 2. HP's Attempted Monopolization Counterclaim.

ChriMar also moves to dismiss HP's attempted monopolization claim on the grounds that HP failed to plead specific intent to monopolize or a dangerous probability of obtaining monopoly power.  In order to state a claim for attempted monopolization, a plaintiff must allege the following elements:  "(1) a specific intent to control prices or destroy competition; (2)

7

1  predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous
2  probability of achieving 'monopoly power,' and (4) causal antitrust injury." *Rebel Oil Co. v.*
3  *Atlantic Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). As discussed above, HP fails to
4  sufficiently allege a causal antitrust injury and the relevant market. Due to these defects, HP
5  fails to allege sufficient facts to state a counterclaim for attempted monopolization. In addition,
6  although a lower percentage is required for an attempted monopoly claim, as opposed to an
7  actual monopoly claim, HP must still allege sufficient market power. *See Rebel Oil*, 51 F.3d at
8  1438 ("When the claim involves attempted monopolization, most cases hold that a market share
9  of 30 percent is presumptively insufficient to establish the power to control price."). Therefore,
10 HP's failure to sufficiently allege market power is fatal to its attempted monopolization claim as
11 well.

12 ChriMar further argues that HP's attempted monopolization counterclaim fails for the
13 additional reason that HP fails to allege specific intent to monopolize or a dangerous probability
14 of obtaining monopoly power because HP's attempted monopolization allegations are based
15 solely around the terminated International Trade Commission ("ITC") investigation. However,
16 upon review of HP's counterclaims, the Court finds that HP does not rely solely upon the ITC
17 investigation. HP's counterclaim for attempted monopolization is also premised upon
18 ChriMar's alleged misconduct before the SSO. As noted above, the Court is providing
19 Defendants with leave to amend their allegations regarding ChriMar's purported misconduct
20 before the SSO and the alleged anti-competitive effect of such conduct. Accordingly, the Court
21 need not determine at this point whether HP's additional allegations regarding the ITC
22 investigation would be sufficient, standing alone, to state a claim for attempted monopolization
23 if HP sufficiently alleges the relevant market, market power, and an antitrust injury. The Court
24 dismisses HP's counterclaim for attempted monopolization but is providing leave to amend.

### 3. Defendants' UCL Counterclaims.

26 ChriMar moves to dismiss Defendants' counterclaims to the extent they are premised
27 upon unfair and unlawful prongs of California UCL because they are premised on the same
28 alleged conduct as their monopolization and attempted monopolization counterclaims. Courts

8

have held that where the alleged conduct does not violate the antitrust laws, a claim based on unfair conduct under the UCL cannot survive. *See DocMagic, Inc. v. Ellie Mae, Inc.,* 745 F. Supp. 2d 1119, 1147 (N.D. Cal. 2010) (finding that because the plaintiff failed to allege facts showing that the defendant's conduct violated the Sherman Act, any claims the plaintiff "might be asserting under the UCL's unfair prong necessarily fail as well." (emphasis added)); *Chavez v. Whirlpool Corp.,* 93 Cal. App. 4th 363, 375 (2001) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason – because it unreasonably restrains competition and harms consumers – the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."); *Live Universe, Inc. v. MySpace, Inc.,* 304 Fed. Appx. 554, 557 (9th Cir. 2008) (same). Because the Court finds that Defendants have not alleged facts sufficient to state a counterclaim for monopolization or attempted monopolization, Defendants' UCL counterclaims, to the extent they are premised on the unfair prong, fail as well.

Moreover because Defendants fail to allege that ChriMar violated the Sherman Act, and thus engaged in unlawful conduct, they fail to state a claim under the UCL. *See Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action" under unlawful prong). Accordingly, the Court dismisses Defendants' UCL counterclaims to the extent they are premised upon the unfair and unlawful prongs. However, because the Court is providing Defendants with leave to amend their counterclaims under the Sherman Act, the Court will provide Defendants with leave to amend their UCL counterclaims as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS ChriMar's motion for judgment on the pleadings and dismisses Defendants' monopolization counterclaim, HP's attempted monopolization counterclaim, and Defendants' UCL counterclaim to the extent they are premised upon the unlawful and unfair prongs. However, the Court is providing Defendants with leave to amend. Defendants may file amended counterclaims in accordance with this

9

1  Order by no later than December 1, 2014.  If Defendants fail to file an amended complaint by
2  December 1, 2014, the Court will dismiss these counterclaims with prejudice.
3  **IT IS SO ORDERED.**

5  Dated: October 29, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE