UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIMAR SYSTEMS INC, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>CISCO SYSTEMS INC, et al.,<br><br>    Defendants. | Case No. 13-cv-01300-JSW   (MEJ)<br><br>**REPORT & RECOMMENDATION RE: MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 257 |

## INTRODUCTION

Pending before the Court is ChriMar Systems, Inc. d/b/a CMS Technologies and ChriMar Holding Company, LLC's (collectively, "ChriMar") Motion for Leave to Amend Infringement Contentions to Defendants Cisco Systems, Inc., Linksys LLC (collectively, "Cisco"), and Defendant Hewlett-Packard Co. ("HP") (collectively, "Defendants"). Dkt. No 257. The matter has been referred to the undersigned to prepare a report and recommendation. Dkt. No. 260. Defendants filed an Opposition (Dkt. No. 258), and ChriMar filed a Reply (Dkt. No. 259). After carefully reviewing the parties' positions, relevant legal authority, and the record in this case, the undersigned **RECOMMENDS** that the Court **GRANT** ChriMar's Motion.

## BACKGROUND

On October 31, 2011, ChriMar filed this patent infringement action against Defendants, accusing them of infringing United States Patent No. 7,457,250 ("the '250 Patent"). Dkt. No. 1. Cisco filed counterclaims on January 6, 2012 (Dkt. No. 23) and amended its counterclaims on December 26, 2012 (Dkt. No. 51). HP filed counterclaims on December 26, 2012. Dkt. No. 52.

The '250 Patent describes a system wherein a central module detects a remote piece of Power over Ethernet ("PoE") equipment connected on an Ethernet network. Information is

conveyed to the central module using the preexisting Ethernet cables that also carry normal network traffic. Jt. Case Mgt. Stmnt. at 3, Dkt. No 127. ChriMar's inventions related to the '250 Patent improve existing technology by reducing the "Total Cost of Ownership" of office computers. Compl., Ex. A (copy of the '250 Patent). Using existing network wiring and without necessitating a connection to alternating current power, the '250 Patent provides a method for permanently identifying assets and determining when an asset has been removed from or added to a company network. *Id.* By identifying and blocking unauthorized devices connected to a network, the '250 Patent improves the security of existing networks. *Id.* Because the '250 Patent system uses only existing cabling and wiring, it is easy and inexpensive to implement in existing network systems. *Id.*

ChriMar alleges that the '250 Patent relates to the detection scheme used by PoE equipment "including, but not limited to Power over Ethernet telephones, switches, wireless access points, routers and other devices used in wireless local area networks, and/or cameras and components thereof that are compliant with the [Institute of Electrical and Electronics Engineers (IEEE)] 802.3af and/or 802.3at standards." Compl. ¶ 16. As such, it is ChriMar's position that each of Defendants' products that practices the IEEE 802.3af and/or 802.3at standards necessarily infringes. *Id.* ¶ 13. ChriMar alleges that Defendants "have been and are now directly infringing, and/or indirectly infringing by inducement and/or contributing to the infringement" of the '250 Patent "by making, using, offering for sale, selling, importing, exporting, supplying and/or distributing" PoE products. *Id.* ¶ 16.

In their counterclaims, Defendants allege that the IEEE is a standard setting organization and that it amended the 802.3 standard with the 802.3af and 802.3at standards. Cisco's First Am. Countercls. ("Cisco FAC") ¶¶ 19-21; HP Countercls. ¶¶ 18-20. The IEEE has a "'patent disclosure policy' that requires participants in the standards setting process to disclose patents or patent applications they believe to be infringed by the practice of the proposed standard." Cisco FAC ¶ 21; HP Countercls. ¶ 21. The disclosure policy further requires those who disclose intellectual property rights to provide a letter of assurance stating whether they would enforce any of their present or future patent(s) whose use would be required to implement the proposed IEEE

1  standard or provide a license to applicants without compensation or under reasonable rates, with
2  reasonable terms and conditions that are demonstrably free of any unfair discrimination ("RAND"
3  terms). *Id.* Defendants allege that ChriMar was required but failed to disclose to the IEEE its
4  belief that its '250 Patent was essential to the proposed 802.3af and/or the 802.3at amendments to
5  the 802.3 standard and that ChriMar was not willing to license the '250 Patent on RAND terms.
6  Cisco FAC ¶ 25; HP Countercls. ¶ 24.

7  Defendants further allege that "ChriMar's failure to disclose the '250 Patent was done
8  knowingly and with intent to deceive and induce the IEEE and participants in the standards setting
9  process" for the amendments to the IEEE 802.3af and 802.3at standards. Cisco FAC ¶ 31; HP
10 Countercls. ¶ 30. "Due in part to ChriMar's knowing and intentional deception, the industry
11 adopted the present form of the IEEE 802.3af and IEEE 802.3at amendments to the IEEE 802.3
12 standard, and is now locked-in to the current implementation . . . for Power over Ethernet-enabled
13 products." Cisco FAC ¶ 32; HP Countercls. ¶ 31. According to Defendants, if ChriMar had
14 properly disclosed to the IEEE its belief that the '250 Patent "would be infringed by practicing the
15 802.3af and 802.3at amendments to the 802.3 standard, and that ChriMar was unwilling to license
16 the patent on RAND terms, the IEEE would have (a) incorporated one or more viable alternative
17 technologies into the IEEE 802.3af and IEEE 802.3at amendments to the IEEE 802.3 standard; (b)
18 required ChriMar to provide a letter of assurance that it would license the '250 Patent on RAND
19 terms; (c) decided to either not adopt any amendment to the IEEE 802.3; and/or (d) adopted an
20 amendment that did not incorporate technology that ChriMar claims is covered by the '250
21 Patent." Cisco FAC ¶ 36; HP Counterclaims ¶ 35.

22 Defendants allege that ChriMar has taken the position that all PoE-enabled products
23 infringe the '250 Patent. To the extent that the '250 Patent is essential to the 802.3af and the
24 802.3at standards, no viable technology substitutes exist, and ChriMar has monopoly power over
25 the PoE Technology Market. Cisco FAC ¶ 64; HP Countercls. ¶ 60. Defendants also allege that
26 ChriMar violated Section 2 of the Sherman Act by abusing monopoly power. HP also brings a
27 claim for attempted monopolization. Both Defendants bring claims under California's Unfair
28 Competition Law, California Business Code § 17200, based on their monopolization claims.

1        On July 9, 2013, pursuant to Patent Local Rule 3-1, ChriMar served its original
2   infringement contentions upon Cisco and HP. Jordan Decl. ¶ 2, Dkt. No. 257-1. Those
3   contentions state: "ChriMar contends that any of Defendants' products compliant with the IEEE
4   802.3af or 802.3at [Power-over-Ethernet] standard infringes." *Id*. ChriMar also reserved the right
5   to "amend these Accused Products, charts, as well as other information contained in this document
6   and the exhibits hereto, to incorporate new information learned during the course of discovery or
7   in response to the Court's claim construction pursuant to Patent L.R. 3-6." *Id.* ChriMar has once
8   previously amended its contentions to Defendants to incorporate additional products identified by
9   Defendants during the discovery process. *See* Aug. 11, 2014 Order, Dkt. No. 198 (granting leave
10  to amend contentions to Cisco); Oct. 20, 2014 Order, Dkt. No. 239 (granting leave to amend
11  contentions to HP).

12       On February 3, 2014, the District Court issued a tentative claim construction ruling,
13  tentatively construing certain claims at issue here to require placing a low frequency signal on the
14  wires that communicate information sufficient to identify or distinguish equipment through low
15  frequency changes. Dkt. No. 179 at 4, 6. The Court issued its final Claim Construction Order on
16  March 18, 2015. Dkt. No. 254. The Court's constructions of the "remote module . . . to alter a
17  flow of current" and "the altered current flow communicating information" limitations are
18  identical to the constructions in the Court's tentative ruling. The Court's construction of the
19  "information about" limitation is substantially the same as the Court's tentative construction,
20  except that it reflects a slight modification proposed by ChriMar during the February 2014 claim
21  construction hearing. *Compare* Dkt. No. 179 at 4-5 with Dkt. No. 254 at 8-11.

22       ChriMar now moves to amend its contentions in light of the Court's claim construction
23  ruling and to incorporate additional products identified by Cisco during discovery. It argues that
24  good cause exists because the amendments address the Court's construction of certain terms in a
25  manner different from that proposed by ChriMar and Defendants. Mot. at 2 (citing Claim
26  Construction Order at 6-11). ChriMar states that its proposed second supplemental infringement
27  contentions include clerical edits designed to merge the separate charting of 802.3af and 802.3at
28  products, as well as address the Court's Claim Construction Order. Jordan Decl. ¶ 3. ChriMar's

4

1   amendments include contentions with regard to the "communicating information" and "alter a
2   flow of current"-related limitations of the '250 Patent. *Id.* They also remove prior theories
3   regarding doctrine of equivalents that were obviated by the Court's construction of limitations
4   referring to "module" and "cable." *Id.* ¶ 4.
5       ChriMar argues that good cause is separately supported in Cisco's case due to Cisco's
6   identification of additional Cisco products that practice the IEEE 802.3af and/or 802.3at standards.
7   Mot. at 3. ChriMar notes that Cisco did not oppose ChriMar's previous amendment of its
8   contentions to identify additional products. *Id.* (citing July 3, 2014 Motion for Leave to Amend,
9   Dkt. No. 197). ChriMar further argues that Cisco (as well as HP) regularly develop new products
10  that include PoE-enabled Ethernet ports that all infringe the asserted claims of the '250 Patent, and
11  there are several hundred accused products to date for Cisco alone. *Id.* ChriMar's previous
12  amendments were based on charts submitted to Cisco for review on May 8, 2014, and did not
13  include products identified by Cisco in Cisco's interrogatory responses subsequent to that date.
14  *Id.* Since May 8, 2014, ChriMar states that Cisco identified 258 additional accused products on
15  May 23, 2014, 8 products on May 30, 2014, and 265 additional accused products on June 20,
16  2014, and that Cisco has not supplemented its interrogatory responses to newly-identify any
17  additional accused products since that time. Jordan Decl. ¶ 6.
18      Finally, ChriMar argues that its proposed amendments do not prejudice Defendants in any
19  way, as they "merely explain to Defendants the already-known infringement theories in view of
20  the terms recently construed by the Court." Mot. at 4. ChriMar notes that "[f]act discovery is still
21  ongoing, no fact discovery cutoff date has been set, no date has been set for expert reports, no trial
22  date has been set, very few depositions have been taken in the District Court litigation, [and] the
23  amendments do not affect any pending or previously-decided motion." *Id.*
24      In response, Defendants argue that ChriMar received the proposed constructions years ago,
25  and the District Court's tentative constructions more than fourteen months ago, but failed to
26  amend its infringement contentions to address the constructions at either of those times. Opp'n at
27  1. As such, Defendants maintain that ChriMar has failed to satisfy the diligence required to permit
28  an amendment to its contentions, and Defendants would therefore be prejudiced if ChriMar is

5

1    permitted to introduce new theories at this stage of the case.  *Id.*  Defendants further argue that

2    ChriMar's motion should be denied because the Court's claim construction ruling established that

3    the accused products do not infringe, and ChriMar therefore seeks to amend its infringement

4    contentions as a means of avoiding a summary judgment ruling of non-infringement.  *Id.*

**LEGAL STANDARD**

"The purpose of preliminary infringement contentions as required by Patent Local Rule 3.1 is to assist the court and guide the parties in focusing on potentially dispositive issues, providing a framework for discovery and generally facilitating the proceedings."  *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1329 (Fed. Cir. 2014) (citing *Network Caching Tech. LLC v. Novell, Inc.*, 2003 WL 21699799, at *5 (N.D. Cal. Mar. 21, 2003) ("PICs [preliminary infringement contentions] are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.")).  The patent disclosure rules "take[] the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery."  *Intertrust Techs. Corp. v. Microsoft Corp.*, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003) (quotation omitted); *see also Bender v. Freescale Semiconductor, Inc.*, 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010).

Patent Local Rule 3-6 governs when a party may amend its infringement contentions and "serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case."  *Brandywine Commc'ns Techs., LLC v. AT&T Corp.*, 2014 WL 1569544, at *15 (N.D. Cal. Apr. 18, 2014) (citing *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (additional citation omitted)).  Thus, a party may amend its infringement contentions only upon a showing of good cause and by order of the Court.  Patent L.R. 3-6.  The moving party has the burden of demonstrating good cause.  *O2 Micro Int'l*, 467 F.3d at 1366.  Good cause requires a showing that the party "acted with diligence promptly when new evidence is revealed."  *Id.* at 1363.  Examples of good cause include (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered,

6

1    despite diligent efforts, before the service of the Infringement Contentions.  Patent L.R. 3-6.

2    "If the court finds that the moving party has acted with diligence, it then must determine
3    whether the non-moving party 'would suffer prejudice if the motion to amend were granted.'"
4    *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (quoting
5    *Acer, Inc. v. Tech. Prop. Ltd.*, 2010 WL 3618687, at *3 (N.D. Cal. Sep. 10, 2010)).  Because "the
6    focus of the inquiry is upon the moving party's reasons for seeking modification," "the existence
7    or degree of prejudice to the party opposing the modification might supply additional reasons to
8    deny a motion," but if the moving party was not diligent, "the inquiry should end."  *Id.* (quoting
9    *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4 (N.D. Cal.
10   Mar. 2, 2004)).  "However, even if the movant was arguably not diligent, the court retains
11   discretion to grant leave to amend."  *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2013 WL
12   5955548, at *1 (N.D. Cal. Nov. 6, 2013); *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL
13   5632618, at *6 (N.D. Cal. Nov. 15, 2012) (granting leave to amend infringement contentions, even
14   though court found plaintiff failed to establish diligence, because of lack of prejudice to
15   defendant).

16                                           **DISCUSSION**

17   **A.    Diligence**

18   ChriMar stresses that it acted diligently in bringing its motion less than a month after the
19   District Court's Claim Construction Order.  Mot. at 3.  It notes that the motion also comes within
20   two weeks of when "it became clear, through the parties' meet-and-confer process, that it would
21   be beneficial if ChriMar amended its contentions to address Defendants' incorrect notion that the
22   Court's claim constructions entitle Defendants to a finding of non-infringement."  *Id.*  ChriMar
23   argues that it should be allowed to amend its contentions because the Court adopted constructions
24   different from ChriMar's proposed constructions.  Reply at 3.

25   As noted above, Patent Local Rule 3-6 provides that circumstances that support a finding
26   of good cause include "[a] claim construction by the Court different from that proposed by the
27   party seeking amendment."  Patent L.R. 3-6(a).  ChriMar filed its motion less than one month after
28   the Court issued its Claim Construction Order, and only after the parties' meet-and-confer efforts.

1   Defendants do not dispute that the Court adopted constructions different from ChriMar's proposed
2   constructions. However, they argue that ChriMar must establish it acted with diligence from the
3   time it received the proposed claim constructions, not from the time those constructions that were
4   ultimately ordered by the Court. Opp'n at 7.

5         The Court agrees that "differing claim construction in and of itself does not constitute good
6   cause[;] the moving party must still establish its diligence." *Verinata Health, Inc. v. Sequenom,*
7   *Inc.*, 2014 WL 789197, *2 (N.D. Cal. Feb. 26, 2014) (internal punctuation and citation omitted).
8   However, Rule 3-6(a) "imposes no different standard when the different claim construction was
9   first proposed by the opposing party." *Emblaze Ltd. v. Apple Inc.*, 2013 U.S. Dist. LEXIS 132169,
10  at *5-6 (N.D. Cal. Sept. 12, 2013) (no Westlaw cite available). Even where the Court, as in this
11  case, previously issued tentative constructions, Rule 3-6(a) does not require a party to seek leave
12  to amend prior to issuance of the final claim construction order. *GPNE Corp. v. Apple Inc.*, 2013
13  WL 6157930, at *2 (N.D. Cal. Nov. 22, 2013) ("Defendants respond that GPNE should have
14  anticipated that Judge Koh's tentative constructions would become final and therefore sought
15  leave to amend earlier. . . . GPNE could not have anticipated the full scope of the amendments
16  needed without the court's claims construction order before it.").

17        Further, unlike the present case, "cases that denied leave to amend infringement
18  contentions after claim construction did so because a significant amount of unaccounted time
19  lapsed between the claim construction order and amendment and the amendments were filed near
20  the end of discovery or close to trial." *MyMedicalRecords, Inc. v. Quest Diagnostics, Inc.*, 2014
21  WL 5810363, at *3 (C.D. Cal. Nov. 6, 2014) (citing *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL
22  1322028, at *7 (N.D. Cal. Mar. 28, 2014) (finding that Samsung was not diligent when filing
23  leave to amend infringement contentions almost a year after the claim-construction order and less
24  than three weeks before trial)). Here, ChriMar seeks leave to amend less than one month after the
25  District Court's Claim Construction Order, fact discovery is ongoing and there is no fact discovery
26  cut-off date, and no trial date has been set. Under these circumstances, the undersigned finds that
27  ChriMar has established its diligence in seeking leave to amend. *See, e.g., Radware Ltd. v. F5*
28  *Networks, Inc.*, 2014 WL 3728482, at *2 (N.D. Cal. 2014) (finding it reasonable for plaintiff to

move for leave to amend three months after claim construction); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2011 WL 940263, at *3 (N.D. Cal. Feb. 18, 2011) (finding that plaintiff's failure to move for leave to amend its infringement contentions until four months after deposition did not show that plaintiff failed to act diligently).

Defendants cite several cases in support of their position, but each of these cases is distinguishable. In *Sunpower Corporation Systems v. Sunlink Corporation*, the court found insufficient cause where the "risk of the construction rendered by the presiding judge was well known and anticipated by Defendant." 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009). However, the court only found that the construction provided insufficient cause because the defendant had already served "[p]rior art and claim charts anticipating" the ordered construction. *Id.* No such issue exists here.

In *Cisco Systems, Inc. v. Teleconference System, LLC*, movant Teleconference waited to move for leave to amend until four months after the court's claim construction ruling. 2012 WL 9337627, at *2 (N.D. Cal. June 11, 2012). The court denied Teleconference's motion, holding that its decision to wait "was motivated at least in part by gamesmanship," and that the "[t]he proposed amendments identify for the first time several components of the accused products as meeting" the construed limitation. *Id.* at *4. In contrast, ChriMar has moved to amend its contentions within one month of the Court's ruling, and the amended contentions do not identify any new components of Defendants' products.

In *France Telecom S.A. v. Marvell Semiconductor Inc.*, the plaintiff argued that it should be allowed to supplement its expert's infringement report. 2014 WL 1899616, at *3 (N.D. Cal. May 12, 2014). Although not addressing infringement contentions, the court discussed Patent Local Rule 3-6 by analogy and reasoned that "since France Telecom's expert report was due before the claim construction ruling issued, France Telecom had an obligation to prepare for the fact that the court may adopt the other party's claim construction" *Id.* at *4 (citations omitted). The court found that the plaintiff failed to establish good cause "by waiting nearly a year, until after expert discovery closed, to seek to supplement [the expert's] infringement report. *Id.* Here, the undersigned finds that ChriMar has acted diligently in preparing amendments. Further, no

9

deadlines have been set as to the close of discovery, the parties have not engaged in expert discovery, and no trial date is set.

Defendants also rely on a case from the District of Delaware, *St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electronic Industrial Co.*, 2012 WL 1015993, at *2 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013). *St. Clair* also addresses a motion for leave to amend an expert report. The court denied leave to amend, in part, because the litigation would "suffer further delay and prolonged disruption if the Court allows additional expert reports and discovery at this time." *Id.* at *8. Once again, ChriMar's proposed amendments do not affect deadlines in this case, and Defendants do not argue that any additional discovery is needed to address ChriMar's proposed amendments.

Finally, in *Verinata Health, Inc. v. Sequenom, Inc.*, the Court found that the movant lacked diligence "even assuming it was proper . . . to wait until the Court's claim construction order was issued before seeking amendment [of its invalidity contentions]." 2014 WL 789197, at *3. There, the movant sought leave to amend nearly three months after the court's claim construction order and "provid[ed] no explanation for this three month delay." *Id.* Here, there is no indication that ChriMar failed to act diligently in seeking leave to amend its contentions within a month of the District Court's claim construction ruling.

Based on this analysis, the undersigned finds that ChriMar acted diligently in seeking leave to amend.

**B.     Prejudice**

As noted above, ChriMar argues that its proposed amendments do not prejudice Defendants because they "merely explain to Defendants the already-known infringement theories in view of the terms recently construed by the Court," fact discovery is still ongoing, no fact discovery cutoff date has been set, and no trial date has been set. Mot. at 4. It maintains that the amendments do not affect any pending or previously-decided motion, and the amendments are not "motivated by gamesmanship." *Id.*

In response, Defendants argue that they "have litigated this case for a long time based on the theories in ChriMar's existing infringement contentions, and should not be required to incur

10

the time and expense that would be involved in re-doing that process to address ChriMar's late-disclosed new theories." Opp'n at 10.  Defendants note their expressed intent to file a motion for summary judgment on non-infringement and argue that "ChriMar waited until after receiving a claim construction ruling clearly foreclosing its infringement claims to seek leave to amend its contentions, in an effort to forestall [their] impending motion. . . ." *Id.* at 10-11.

"The Patent Local Rules were designed, among other reasons, to prevent the parties from shifting their theories late in discovery, leaving the opposing party with little time to conduct discovery on a new theory." *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, 2008 WL 2622794, at *4 (N.D. Cal. July 1, 2008) (citing *O2 Micro Int'l*, 467 F.3d at 1365).  Here, there is no evidence that ChriMar is shifting legal theories; instead, it seeks to "explain to Defendants the already-known infringement theories in view of the terms recently construed by the Court." Mot. at 4.  ChriMar states that its amendments "involve the exact same accused instrumentalities, the operation of which is understood from publicly-available IEEE standards," and "that the amendments are derived from ChriMar's expert report that was previously litigated in the [International Trade Commission] ITC case and incorporated into ChriMar's infringement contentions from the outset."  Reply at 14.

Defendants argue that the proposed amendments add new theories of infringement to ChriMar's contentions.  Opp'n at 7.  They maintain that "ChriMar's alleged incorporation of its new theories in the original infringement contentions consists of a single sentence purporting to incorporate all 9,383 pages of one of ChriMar's expert reports in the ITC investigation: 'ChriMar further incorporates by reference, as if fully set forth in this disclosure, the May 16, 2012 expert report of Les Baxter . . . .'"  *Id.* (quoting ChriMar's Disclosure of Asserted Claims and Infringement Contentions (Patent L.R. 3-1) and Statement Regarding Accompanying Document Disclosure (Patent L.R. 3-2), dated July 9, 2013, De Vries Decl., Ex. 7, Dkt. No. 258-8).  Defendants note that the passage of Baxter's report relied upon by ChriMar was not charted or mapped against the claims in ChriMar's original infringement contentions, and this type of cursory, general incorporation by reference fails to put the alleged infringer on proper notice of any infringement theory as required by the Patent Local Rules.  *Id.*  ChriMar, however, maintains

11

that its infringement theories "are taken almost wholesale from the expert report of Les Baxter, which was already expressly incorporated into ChriMar's infringement contentions." Reply at 11.

Given that this case involves facts that were litigated in the ITC case, and both sides have incorporated their expert reports from that case when setting forth their invalidity contentions in this case, it is unclear why reference to Baxter's report adds new theories that were unknown to Defendants. Regardless, there is no discovery deadline or trial date yet set, so it is not unreasonable for Defendants to have to expend additional resources, and "the Patent Local Rules' concern with parties sandbagging opponents late in the discovery period is [ ] not at issue." *Fujifilm Corp. v. Motorola Mobility LLC,* 2014 WL 491745, at *6 (N.D. Cal. Feb. 5, 2014) (quoting *Yodlee Inc. v. CashEdge, Inc.*, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007)); *see also Streak Prods., Inc. v. Antec, Inc.*, 2010 WL 3515752, at *2 (N.D. Cal. Sep. 8, 2010) (finding no prejudice where the defendants were "merely seek[ing] to supplement the evidence used for a legal theory that was pled in their answers," and there was no discovery deadline or trial date set). Accordingly, the undersigned finds that Defendants will not be unduly prejudiced if the Court grants ChriMar's motion to amend its infringement contentions.

## CONCLUSION

Based on the above analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** ChriMar's Motion for Leave to Amend its Infringement Contentions.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: May 14, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge