UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIMAR SYSTEMS INC, et al.,

    Plaintiffs,

    v.

CISCO SYSTEMS INC, et al.,

    Defendants.

Case No. 13-cv-01300-JSW   (MEJ)

**DISCOVERY ORDER**

Re: Dkt. No. 287

## INTRODUCTION

This is a patent infringement case in which Plaintiffs ChriMar Systems, Inc. d/b/a CMS Technologies and ChriMar Holdings Company, LLC (collectively "ChriMar") allege infringement of U.S. Patent No. 7,457,250 (the '250 patent). Compl. at 1, Dkt. No. 1. Pending before the Court is the parties' joint discovery dispute regarding certain documents ChriMar withheld from production to Defendants Cisco Systems, Inc. and Linksys, LLC f/k/a Cisco Consumer Products LLC (collectively "Cisco") based on claims of attorney-client privilege and/or work product protection. Jt. Ltr., Dkt. No. 287. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

On October 31, 2011, ChriMar filed this suit alleging Defendants Cisco and Hewlett-Packard Co. infringed the '250 Patent, entitled "System for Communicating with Electronic Equipment," which allows power to be sent over Ethernet. Compl. at 5. The technology is used for Power over Ethernet telephones, switches, wireless access points, routers and other devices used in wireless local area networks, and/or cameras and components thereof that are compliant with Institute of Electrical and Electronics Engineers[1] standards. *Id.* at 5-6. The technology

---

[1] The Institute of Electrical and Electronics Engineers is a standard-setting organization that sets technical specifications to ensure a variety of products from different manufacturers operate

"allows buildings . . . to be designed so that electrical plugs do not need to be located near where network devices are used." Cisco Second Am. Countercl. at 22, Dkt. No. 242. Additionally, "the use of Power over Ethernet permits devices like VoIP phones to continue to receive power from a Power over Ethernet switch in the event of power outages." *Id.*

On December 29, 2015, the parties filed the present letter in which they dispute whether ChriMar has properly withheld 258 emails based on claims of attorney-client privilege and/or work product protection. Jt. Ltr. at 3. The emails at issue were sent by John Austermann, a named inventor of the patent-in-suit and non-lawyer, to himself. *Id.* ChriMar maintains the documents are privileged, arguing that each communication reflects and contains legal advice Mr. Austermann received from his attorneys. *Id.* Cisco argues ChriMar has not met its burden of establishing these emails are privileged. *Id.*

On January 4, 2016, the Court ordered ChriMar to submit unredacted copies of the documents for *in camera* review. Order, Dkt. No. 289. In addition to submitting the documents, the Court ordered ChriMar to file a declaration from each attorney referenced in its privilege log attesting as to each document that (1) Mr. Austermann sought legal advice from him, (2) the document contains confidential communications relating to that purpose, and (3) the document contains privileged material and should not be produced. *Id.*

On January 11, 2016, ChriMar delivered unredacted copies of the emails and filed a Notice of Compliance with the Court's Order. Pl.'s Not., Dkt. No. 306. In its Notice, ChriMar withdrew claims of privilege as to certain emails. *Id.* at 2. ChriMar also submitted declarations from attorneys Christopher M. Taylor (Dkt. No. 306-1), G. Gregory Schivley (Dkt. No. 306-2), Richard W. Hoffman (Dkt. No. 306-3), and J. Michael Huget (Dkt. No. 306-4). ChriMar requested the Court proceed without a declaration from attorney Ralph Terrance Rader, as his recollection of contact with Mr. Austermann was limited due to a stroke, and he declined to submit a declaration for that reason. Pl.'s Not. at 2-3. ChriMar also requested additional time to submit a declaration

---

compatibly. *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030 (9th Cir. 2015). Because these standards often incorporate patented technology, all manufacturers who implement a standard must obtain a license to use those standard-essential patents. *Id.*

1   from attorney Glenn Forbis, as he reported pre-existing obligations that made him unable to
2   examine the large volume of material by the January 4 deadline. *Id.* at 3. The Court granted
3   ChriMar until January 22, 2016 to submit Mr. Forbis's declaration. Dkt. No. 307. On January 21,
4   2016, ChriMar filed a second Notice of Compliance, withdrawing its privilege claims as to
5   additional emails. Dkt. No. 317. ChriMar also filed Mr. Forbis's Declaration. Dkt. No. 317-1.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may (1) prohibit disclosure or discovery; (2) condition disclosure or discovery on specified terms; (3) prevent inquiry into certain matters; or (4) limit the scope of disclosure or discovery to certain matters.

Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

Cisco argues ChriMar has failed to meet its burden of establishing the withheld emails are privileged for two reasons.[2] Jt. Ltr. at 3. First, Cisco contends there is no indication that any of these documents was sent to, or received from, any attorney. *Id.* Second, Cisco argues that previous discovery produced by ChriMar has revealed other emails Mr. Austermann sent to himself reflect his own thoughts, even when they were initially withheld based on claims that the emails reflected, contained, or facilitated legal advice, analysis, or litigation strategy. *Id.* at 4.

In response, ChriMar claims the emails are privileged because they reflect and memorialize legal advice. *Id.* at 5. Relying on *Shire Development, Inc. v. Cadila Healthcare Limited*, 2012 WL 5247315, at *3 (D. Del. June 15, 2012), ChriMar argues a document does not need to be addressed to or from an attorney to be privileged. Jt. Ltr. at 6. Even if an attorney never saw the emails in question, ChriMar contends that as long as those emails reflect notes of what the client told the attorney, they are as privileged as a confidential conversation between a client and the attorney. *Id.* (citing *United States v. Motorola, Inc.*, 1999 WL 552553, at *5 (D.D.C. May 28, 1999)).

### A.     The Attorney-Client Privilege

Federal privilege law applies in this federal question case. *See Loop AI Labs Inc. v. Gatti*, 2016 WL 730211, at *2 (N.D. Cal. Feb. 24, 2016) ("In nondiversity jurisdiction civil cases, federal law privilege will generally apply." (quoting Fed. R. Evid. 501, advisory committee notes)). The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). In the Ninth Circuit, the elements of the privilege are:

---

[2] Initially, relying on *Hynix Semiconductor v. Rambus, Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008), Cisco maintained that ChriMar's failure to support its privilege with declarations from the attorneys was fatal to its privilege claim. Jt. Ltr. at 3. However, as ChriMar subsequently submitted these declarations, this argument is moot.

4

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002) (quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). The privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc. v. IBM Corp.*, 2011 WL 1599646, at *1 (N.D. Cal. Apr. 27, 2011) (citations omitted); *see also United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that the party asserting privilege "must make a *prima facie* showing" that privilege applies (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992))).

When a party asserts the privilege to withhold documents, it must "expressly make the claim" and "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The privilege log is an accepted method for doing so. *In re Grand Jury Investigation*, 974 F.2d at 1071. When a privilege log is insufficient, this can be cured by providing "affidavits of the attorneys who prepared the documents declaring that the documents contained confidential information for the purpose of seeking legal advice and that the contents of the documents had not been disclosed to anyone outside of the retained law firm or the corporation." *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5214330, at *3 (N.D. Cal. Dec. 12, 2008). However, "[a] vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Hynix*, 2008 WL 350641, at *3.

**B.     Whether Mr. Austermann's Emails To Himself Can Be Privileged**

As noted above, Cisco argues Mr. Austermann's emails to himself are not privileged because there is no indication they were sent to, or received from, an attorney. Jt. Ltr. at 3. However, a document that is not communicated between an attorney and a client may still be privileged as long as "the document by its nature and contents memorializes and reflects legal advice rendered in a privileged conversation." *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2009 WL 533124, at *1 (N.D. Cal. Mar. 3, 2009) (citing *In re Rivastigmine Patent*

5

1  *Litig.*, 237 F.R.D. 69, 83 (S.D.N.Y. 2006)). Courts recognize that "[d]isclosure of [a] client's
2  notes of what he told the attorney would have the same inhibiting effect on the client as asking
3  him directly to state what he told the attorney in confidence." *United States v. Motorola, Inc.*,
4  1999 WL 552553, at *5 (D.D.C. May 28, 1999); *see also Alexander v. FBI*, 186 F.R.D. 154, 161
5  (D.D.C. 1999) ("[t]he attorney-client privilege applies to entries in a client's diaries that describe
6  communications from attorneys or are based on such communications") (citation omitted; brackets
7  in original); *Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp., Inc.*, 190 F.R.D. 505, 515 (W.D.
8  Tenn. 1999) (finding the attorney-client privilege applied to handwritten notes describing a
9  discussion between an attorney and a client "for the purposes of legal advice [that] was intended to
10 be confidential"). Finally, "communications between a corporation and its outside counsel are
11 presumed to be made for the purpose of seeking *legal* advice." *United States v. ChevronTexaco*
12 *Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (emphasis in original). Thus, there is no
13 reason why Mr. Austermann's emails are not entitled to protection based solely on the fact that
14 they were written by him to himself. While not communicated to his attorneys, Mr. Austermann
15 and his attorneys attest that the emails memorialize and reflect confidential communications made
16 for the purpose of conveying legal advice. Jt. Ltr. at 4; Taylor Decl. ¶ 5; Schivley Decl. ¶ 5;
17 Hoffman Decl. ¶ 5; Huget Decl. ¶ 5; Forbis Decl. ¶ 5. So long as Mr. Austermann's emails
18 describe confidential communications with his attorneys, or are based on such communications,
19 they may be protected by the attorney-client privilege.
20 **C.    Whether Mr. Austermann's Emails Are Privileged**
21        Next, Cisco argues the emails do not memorialize legal advice sought from an attorney in a
22 privileged conversation. Jt. Ltr. at 4. Specifically, Cisco asserts "ChriMar's privilege log entry
23 for each of the Withheld Documents is virtually identical in nature and substance to ChriMar's
24 entry for the CB-4 document," an email which ChriMar initially withheld, but the Court ordered
25 produced after finding ChriMar's description on the privilege log did not meet its burden of
26 establishing the attorney-client privilege applied. *Id.* Cisco argues that like the CB-4 email, "each
27 of the Withheld Documents is an email from Mr. Austermann—a non-lawyer—to himself" and
28 that "discovery in this action has revealed that Mr. Austermann regularly took notes of his own

thoughts by sending emails to himself." *Id.* at 3. For example, ChriMar has now produced an email that on one of its previous privilege logs it described as an "[e]mail chain that reflects, contains or facilitates legal advice, analysis or strategy regarding pending litigation," and it also produced an email sent from Mr. Austermann to himself that stated "[t]hings to think about" followed by a list. *Id.* at 4; *see also id.*, Ex. B (ChriMar's Suppl. Am. Privilege Log) at 2, Dkt. No. 287-2. Indeed, ChriMar has now produced more than 25 emails that initially were claimed to reflect or facilitate legal advice. Jt. Ltr. at 4. Thus, Cisco maintains ChriMar has not met its burden of establishing privilege. *Id.* at 5.

ChriMar argues the emails memorialize legal advice in a privileged conversation and that a "careful review" of the descriptions of privilege on the latest amended log corroborates that the Withheld Documents do not have the "same substance and format as CB-4." *Id.* at 6. In support, ChriMar notes that for each email, its log identifies the attorneys that were participants in the privileged communication with Mr. Austermann. *Id.* at 5. ChriMar submitted declarations from all but one of those attorneys. Dkt. Nos. 306-1, 306-2, 306-3, 306-4, 317-1. ChriMar also points out that "Cisco itself logged documents for privilege where no attorney is indicated as appearing on the communication." Jt. Ltr. at 6.

When conducting an *in camera* review, courts consider the "'totality of circumstances'" and offer protection when the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at *3-4 (N.D. Cal. June 16, 2006), *as clarified on reconsideration*, 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006) (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004)). In assessing the nature of the document, courts look at the facts and context surrounding the creation of the document, taking into account the "breadth of the recipient list in assessing the centrality of potential legal advice generated by the communication" and "whether a communication explicitly sought advice and comment." *Id.* at *4.

ChriMar's privilege log includes the date of each email, the sender and recipient, a statement that each email "reflects and memorializes legal advice," and identifies which attorney

7

communicated with Mr. Austermann. Jt. Ltr., Ex. A (ChriMar's Second Am. Privilege Log), Dkt. No. 287-1. This in itself can be sufficient to establish privilege. *See, e.g.*, *In re Grand Jury Investigation*, 974 F.2d at 1071 (concluding a log is sufficient when it identifies: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated"). However, given that the emails were sent and received by the same person, who is not a lawyer, it is not clear based on the privilege log alone that the emails document advice from privileged communications.

Having carefully reviewed each email and the attorney declarations submitted by ChriMar, the Court finds ChriMar has properly withheld certain emails under the attorney-client privilege.[3] These emails fall into one of the following categories:

> 1) Emails memorializing privileged communications concerning litigation strategies for actions involving Cisco (mainly the infringement of U.S. Patent 5,406,260 ('260)). This includes: (1) strategies for preparation, pre-filing, pleading, proposed briefing, court rulings, claims of prior art, and licensing agreements; (2) analysis of Special Master's rulings; and (3) assessments of infringement elements/facts and the validity of Cisco's claims.
>
> 2) Emails memorializing privileged communications concerning litigation strategies regarding pleading, licensing, and settlement for an action involving Power Dsine's infringement of U.S. Patent '260.
>
> 3) Emails memorializing privileged communications concerning legal advice for patent prosecution and enforcement of ChriMar intellectual property.

---

[3] These emails are identified in the privilege log as: CB-1, 92, 696, 698, 699, 700, 701, 703, 705, 710, 721, 722, 723, 724, 731, 733, 736, 738, 1357, 1528, 2195, 2196, 2204, 2208, 2218, 2219, 2220, 2221, 2233, 2234, 2381, 2382, 2394, 2408, 2452, 2453, 2461, 2463, 2465, 2466, 2467, 2468, 2469, 2470, 2471, 2474, 2496, 2568, 2591, 2892, 2953, 3014, 3044, 3239, 3240, 3273, 3298, 3307, 3324, 3342, 3382, 3402, 3407, 3422, 3449, 3464, 3551, 3573, 3588, 3751, 3752, 3753, 3754, 3774, 3836, 3837, 3838, 3900, 3916, 3917, 3944, 3945, 3987, 3988, 3989, 3990, 3991, 3992, 4048, 4049, 4050, 4051, 4052, 4053, 4054, 4057, 4110, 4113, 4114, 4115, 4117, 4220, 4221, 4222, 4223, 4224, 4225, 4227, 4282, 4333, 4373, 4374, 4375, 4377, 4378, 4400, 4448, 4449, 4452, 4474, 4526, 4527, 4528, 4529, 4530, 4531, 4532, 4533, 4534, 4558, 4579, 4580, 4584, 4585, 4586, 4587, 4593, 4598, 4599, 4603, 4604, 4660, 4668, 4669, 4670, 4673, 4685, 4706, 4707, 4709, 4725, 4792, 4795, 4800, 4801, 4803, 4811, 4812, 4881, 4941, 4996, 5044, 5066, 5114, 5157, 5190, 5206, 5224, 5228, 5239, 5243, 5245, 5627, 5781, 5805, 6266, 6325, 6333, 6349, 6422, 6427, 6428, 6429, 6430, 6441, 6452, 6467, 6476, 6479, 6486, 6495, 6501, 6502, 6503, 6524, 6533, 6556, 6582, 6586, 6598, 6599, 6612, and 6637. Dkt. No. 287-1.

> 4) Emails memorializing privileged communications concerning legal advice regarding IBM references from prior art database.

These categories represent emails created based on the threat of litigation or litigation that was ongoing at the time they were written. While Cisco contends these emails are analogous to those ChriMar has already been ordered to produce, such as the CB-4 email, these emails memorialize direct legal questions posed to a named attorney, describe updates about business and litigation developments regarding infringement litigation, outline summaries of legal advice received, and concern communications involving patent prosecution strategy. Jt. Ltr. at 3-4. These emails are privileged as they would not have been created in substantially the same form if not for litigation or patent prosecution. *See In re CV Therapeutics*, 2006 WL 1699536, at *4 ("The attorney-client privilege protects documents which 'involve either client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found.'" (quotation omitted)); *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 378 (N.D. Cal. 1992) ("Communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege.").

Further, while some emails contain both business and legal analysis, such as the discussion of licensing agreements, they "d[o] not have a readily separable purpose unrelated to the provision of legal advice," given that business analysis informs the legal strategy for infringement litigation. *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *9 (N.D. Cal. Aug. 23, 2004) (holding documents prepared at the request of counsel for the purpose of rendering legal advice are privileged even if they may have informed business analysis as well). Accordingly, ChriMar properly withheld these documents.[4]

---

[4] On reconsideration of its previous order, the Court in *In re CV Therapeutics* noted the "because of" standard laid out by the Ninth Circuit in *In re Grand Jury Subpoena*, 357 F.3d at 900, dealt with the work product privilege and not the attorney-client privilege, and that some cases in this District have used a "predominate purpose" standard for attorney-client privilege. 2006 WL

9

Emails identified in ChriMar's privilege log as 4196 and 5075 contain both privileged and nonprivileged information. Dkt. No. 287-1. Both emails concern similar content, where the bottom portion of each appears to represent legal advice in a privileged conversation like those emails described above. However, the top portion of each email contains what appears to be a schedule or reminder list that is unrelated to legal advice. Therefore, ChriMar shall produce these emails, but may redact the portion beginning with "***Concise . . ." to the end of the emails.

As to the remaining emails, the Court finds ChriMar has not meet its burden to establish privilege. These emails fall into one of two categories: (1) documents created for purely business purposes;[5] and (2) documents that include unknown senders/recipients that are attributed to the legal advice of an attorney in the privilege log.[6]

Regarding the first category of documents, "the critical question is the extent to which the communication solicits or provides legal advice or functions to facilitate the solicitation or provision of legal advice." *In re CV Therapeutics*, 2006 WL 1699536, at *4 (concluding a document created for business or technical purposes must be "so permeated by the need for legal advice such that the documents were created 'because of' the need to obtain legal advice"). A document that has a "readily separable business purpose" or that "would have been prepared as part of ordinary course of business" cannot receive protection. *Visa U.S.A.*, 2004 WL 1878209, at *8.

Three of the four emails in the first category (3041, 5238, 6526) are related to board meetings, including agenda items and lists of items for board review, such as cash flow, salaries,

---

2585038, at *2 (citing *In re Napster, Inc. v. Bertelsmann AG*, 2005 U.S. Dist. LEXIS 11497, at *19 n. 1 (N.D.Cal. Apr. 12, 2005)). However, like the court in *In re CV Therapeutics*, the Court discerns no reason why "for purposes of determining the discoverability of documents that have both a legal purpose and a nonlegal purpose (e.g., business purpose), the methodology in *In re Grand Jury Subpoena* should not be applied to the attorney-client privilege," and regardless, "the result in the instant case is the same under either standard." *In re CV Therapeutics*, 2006 WL 2585038, at *2.

[5] These emails are identified in the privilege log as: 3041, 4999, 5238, and 6526. Dkt. No. 287-1.
[6] These emails are identified in the privilege log as: 697, 788, 793, 2454, 2486, 3400, 3481, 3757, 3921, 3968, 4060, 4094, 4095, 4109, 4151, 4235, 4236, 4258, 4549, 4550, 4551, 4552, 4573, 4574, 4576, 4577, 4578, 4590, 4591, 4592, 4600, 4602, 4674, 4680, 4787, 4943, 5047, 5111, 6205, 6323, 6326, 6386, and 6470. Dkt. No. 287-1.

1   and costs.  Documents prepared for a board meeting that would have been created regardless of

2   litigation are not privileged.  *Id.* (holding materials prepared to inform board of substantive

3   business decisions were not privileged, even if sent to counsel for review, as they "cannot fairly be

4   said that they were created in the first place because of the need to obtain legal advice" when they

5   would have been prepared in any event).  A fourth email (4999) merely discusses public or non-

6   confidential information and contains no legal advice.  Without further explanation, the Court

7   cannot find these emails are privileged.

8        As to the second category, it is not clear these emails are privileged as they include

9   unknown senders and recipients.  While the privilege log states these emails memorialize legal

10  advice from a named attorney, it does not identify the other recipients or senders named in the

11  emails or in the "To" or "From" fields in emails included in the body of the emails Mr.

12  Austermann sent to himself.  Dkt. No. 287-1.  Furthermore, the inclusion of unidentified email

13  recipients can "destroy[] the confidential nature of the communication absent an explanation of

14  who the[] recipients were."  *In re CV Therapeutics*, 2006 WL 1699536, at *9; *In re Rivastigmine*

15  *Patent Litig.*, 237 F.R.D. at 83 ("Without information identifying the individuals involved in the

16  particular communications, it is impossible for the plaintiffs to meet their burden of establishing

17  the 'attorney' element of the attorney-client privilege.").  Thus, ChriMar should produce these

18  emails as it has not explained how they memorialize legal advice.

19                                        **CONCLUSION**

20       Based on the analysis above, the Court **ORDERS** as follows:

21      1)     The following emails are privileged and need not be produced:

CB-1, 92, 696, 698, 699, 700, 701, 703, 705, 710, 721, 722, 723, 724, 731, 733, 736, 738, 1357, 1528, 2195, 2196, 2204, 2208, 2218, 2219, 2220, 2221, 2233, 2234, 2381, 2382, 2394, 2408, 2452, 2453, 2461, 2463, 2465, 2466, 2467, 2468, 2469, 2470, 2471, 2474, 2496, 2568, 2591, 2892, 2953, 3014, 3044, 3239, 3240, 3273, 3298, 3307, 3324, 3342, 3382, 3402, 3407,  3422, 3449, 3464, 3551, 3573, 3588, 3751, 3752, 3753, 3754, 3774, 3836, 3837, 3838, 3900, 3916, 3917, 3944, 3945, 3987, 3988, 3989, 3990, 3991, 3992, 4048, 4049, 4050, 4051, 4052, 4053, 4054, 4057, 4110, 4113, 4114, 4115, 4117, 4220, 4221, 4222, 4223, 4224, 4225, 4227, 4282, 4333, 4373, 4374, 4375, 4377, 4378, 4400, 4448, 4449, 4452, 4474, 4526, 4527, 4528, 4529, 4530, 4531, 4532, 4533, 4534, 4558, 4579, 4580, 4584, 4585, 4586, 4587, 4593, 4598, 4599, 4603, 4604, 4660, 4668, 4669, 4670, 4673,

        4685, 4706, 4707, 4709, 4725, 4792, 4795, 4800, 4801, 4803, 4811, 4812, 4881, 4941, 4996, 5044, 5066, 5114, 5157, 5190, 5206, 5224, 5228, 5239, 5243, 5245, 5627, 5781, 5805, 6266, 6325, 6333, 6349, 6422, 6427, 6428, 6429, 6430, 6441, 6452, 6467, 6476, 6479, 6486, 6495, 6501, 6502, 6503, 6524, 6533, 6556, 6582, 6586, 6598, 6599, 6612, and 6637.

2)    ChriMar shall produce the following emails in redacted format: 4196 and 5075.

3)    ChriMar has not met its burden to establish privilege as to the following emails:

        697, 788, 793, 2454, 2486, 3041, 3400, 3481, 3757, 3921, 3968, 4060, 4094, 4095, 4109, 4151, 4235, 4236, 4258, 4549, 4550, 4551, 4552, 4573, 4574, 4576, 4577, 4578, 4590, 4591, 4592, 4600, 4602, 4674, 4680, 4787, 4943, 4999, 5047, 5111, 5238, 6205, 6323, 6326, 6386, 6470, and 6526.

Accordingly, by April 28, 2016, ChriMar shall either (a) produce these emails, or (b) lodge (not file) a brief for *in camera* review addressing the deficiencies noted above. If ChriMar chooses to lodge a brief, it must provide a separate explanation for each withheld email; a blanket statement for all emails will not suffice.

**IT IS SO ORDERED.**

Dated: April 21, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge